# LEWIS W. PITCHER

### v.

# THE BOARD OF TRADE OF THE CITY OF CHICAGO.

1. CORPORATIONS—POWERS OF EXPULSION.—A distinction is generally recognized as respects the power of expulsion between voluntary unincorporated bodies and those which are incorporated or created by statute.

2. VOLUNTARY ORGANIZATIONS—SAME.—In the former case the power of expulsion may be provided for by rules and by-laws, and if it be exercised by a fair and honest compliance with such rules or by-laws an expelled member is without redress from the courts.

3. INCORPORATED BODIES—SAME.—But in incorporated bodies, where the several members are in the enjoyment of a franchise conferred by statute, a member can not be expelled and disfranchised by any act of the corporation, unless the power to do so is expressly conferred by the statute; and this is peculiarly so as to any corporation owning property in which the respective members have a beneficial interest, either absolute or contingent.

4. BOARD OF TRADE—BEFORE AND AFTER INCORPORATION.—The court is of the opinion that as to those members of the voluntary organization known as the Board of Trade of the City of Chicago, which was incorporated by act of 1859, whatever franchises, rights or privileges were conferred upon them respectively by such incorporation were derived directly from the statute; but that as to all persons subsequently becoming members, their rights and privileges are to be in reality derived from the body itself, rather than from the statute.

5. SAME—EXPULSION OF MEMBER UNDER BY-LAWS HELD VALID.—The court is of the opinion that the by-laws of the Board of Trade, under which appellant was tried, convicted and expelled, were authorized by the act of incorporation, are not inconsistent with any principle of natural justice or the laws of the land, and are valid; and that the trial, conviction and expulsion were by a tribunal (board of directors) not only authorized by appellee's charter but by reason of appellant agreeing to be bound by said by-laws.

6. JURISDICTION.—Under the decisions of the Supreme Court, a court of chancery is not the proper forum in a case of this character.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.   Opinion filed November 8, 1886.

This record shows that the Board of Trade of the city of Chicago is a body corporate, created by an act of the legislature of this State, passed February 18, 1859, and that the ap-

pellant, Pitcher, was admitted as a member thereof some eight years ago. That March 16, 1886, one Hall made a complaint in writing against appellant, charging him with fraudulent conduct in business transactions, as a member of said corporation, and that, upon presentation of said complaint to the board of directors, the latter appointed a committee from its own members to investigate said charges ; that said committee, after investigation, made a report containing specific charges of dishonorable conduct on the part of appellant in said business transactions, whereupon said board of directors caused appellant to be notified of said charges and to appear and answer the same.

It appears that appellant, in pursuance of said notice, did appear before said board of directors, May 4, 1886, and pleaded not guilty to said charges, without any objection to the jurisdiction of said board of directors. That thereupon a trial ensued, Pitcher being present and participating therein ; that the trial continued from day to day, until May 11, 1886, when the said board of directors before whom it was had, comprising sixteen, sustained said charges, and by a vote of thirteen for to three against, ordered that Pitcher be expelled from the corporation. From and after which he was excluded from the exchange hall of said Board of Trade, and all the privileges of membership. That June 14, 1886, Pitcher filed his petition in the circuit court for a mandamus to said Board of Trade, to restore him to membership thereof, of which he had been thus deprived, upon the principal ground, that said order of expulsion was illegal and void, for the following reasons :

First. That said Board of Trade, a body corporate of which he had become a duly admitted member upon a money consideration, as well as being otherwise qualified, was the owner of a large amount of property, held by it in trust for the benefit of its members; a certificate of membership thereof being of the value of ten thousand dollars.

Second. That the power of expulsion was by the charter vested in the corporation at large, and could not be exercised by a board of directors, since it was a power in trust which could not be delegated.

Third. That by the by-laws of the corporation the concurrence of at least twelve directors was indispensable to the validity of an order of expulsion, if it be conceded that the directors possessed the power; that two of the thirteen directors voting for expulsion had been appointed and acted as prosecutors upon the trial.

Fourth. That out of said thirteen directors voting for expulsion, there were two who were not present at the hearing, and in rendering their judgment in concurrence with the other eleven, acted upon evidence which was introduced orally, but which they did not hear. It appears that upon such petition a summons issued, and was served on said Board of Trade, returnable June 21, 1886 ; and that before said day, and June 8, 1886, Pitcher exhibited his bill on the chancery side of said court, setting up the same matters as in said petition, and facts and circumstances showing an irreparable injury, and praying that said Board of Trade be restrained from interfering with or preventing plaintiff from having access to the said exchange hall or enjoying the privileges of membership, until the determination of said mandamus case. A temporary injunction was issued pursuant to the prayer of said bill, but which was, upon motion of defendant, dissolved, and the bill dismissed by the court for want of equity.

It appeared that at the time Pitcher became a member the following rules or by-laws were in force, and that Pitcher, at the time, signed an agreement as a condition of his admission to abide by them.

" Sec. 9. When any member of the association shall be guilty of improper conduct of a personal character, in any of the rooms of the association, or when any member shall be guilty of a willful violation of any business contract or obligation, and shall neglect or refuse to equitably and satisfactorily adjust and settle the same; or when any member shall willfully neglect or refuse to comply promptly with the award of any committee of arbitration or committee of appeals, rendered in conformity with the rules, regulations, and by-laws of the association; or when any member shall violate any of the rules, regulations or by-laws of the association; or when any

member shall be guilty of making or reporting any false or fictitious purchases or sales; or when any member shall be guilty of any act of bad faith, or any attempt at extortion, or of any dishonorable or dishonest conduct, he shall be censured, suspended or expelled by the board of directors, as they may determine from the nature and gravity of the offense committed. A majority of a quorum, sitting at a regular or adjourned meeting of the board of directors, shall be necessary to censure or suspend, and an affirmative vote of at least twelve members of the board of directors shall be necessary to expel."

" Sec. 16.    It shall be the duty of the board of directors, in case any grave offense or act of dishonesty committed by any member, involving the good name or dignity of the association, or any act of dishonesty on the part of a member shall come to their knowledge, either by complaint or public report, to cause a preliminary or informal investigation to be made, by a committee of their number, into the truth or falsity of such complaint or report ; and if the said committee, after investigation, shall deem any member guilty of such offense, they shall so report to the board of directors, with specific charges ; whereupon the member thus implicated shall be notified to appear before the board of directors in manner as provided by section 14 of this rule, and, if found gui'ty, the said member shall be suspended or expelled, as hereinbefore provided."

From the decree aforesaid Pitcher appealed to this court, and assigns the dissolution of said injunction and dismissal of said bill, as error.

Messrs. BISBEE, AHRENS & DECKER, and Mr. C. BECKWITH, for appellant; that an expulsion is a forfeiture and is not favored in law, cited People v. N. Y. Cotton Ex., 15 N. Y. 216; Evans v. Phila. Club, 50 Penn. 127; People v. Medical So., 32 N. Y. 187; 17 Cent. Law Journal, 295.

By-laws which vest in a majority the power of expulsion for minor offenses are void, and expulsions made under them will not be sustained in a court of justice: Evans v. Phila. Club, 50 Penn. 127.

The power to disfranchise can only be exercised by the entire association: Medical So. v. Wetherly, 75 Ala. 248; Commrs. v. German So., 15 Penn. St. 251.

In all courts, all triers must be indifferent both as to the parties and as to the issue: Gates v. People, 14 Ill. 433; Winnesheik Ins. Co. v. Schueller, 60 Ill. 466; C. & A. R. R. Co. v. Adler, 56 Ill. 344; Fleming v. State, 11 Ind. 234; Rice v. State, 16 Ind. 298; Rex v. Edmonds, 4 B. & Ald. 471; Stewart v. State, 15 O. St. 155; Rafe v. State, 20 Ga. 60; Willis Case, 15 Howell St. Trials, 613; Com. v. Hussey, 9 Pick. 496; Spear v. Spencer, 1 Iowa, 534.

As to the jurisdiction of equity: Hutchinson v. Lawrence, 67 Howard Pr. R. 38 (1884); Olerry v. Brown, 51 Howard Pr. Rep. 92; Littleton v. Blackburn, 33 L. T. Rep. (N. S.) 641; White v. Brownell, 4 Abb. Pr. R. 162; Roorke v. Russell, 2 Lansing, 244; Ryan v. Brown, 18 Mich. 196; Fisher v. Keane, 11 Law Rep. Ch. Division, 353; Leech v. Harris, 2 Brewst. (Penn.) 571; Dickens v. Chamber of Commerce, 29 Wis. 45.

Mr. SIDNEY SMITH, for appellee; that equity will not interfere by injunction in this case, cited Fisher v. Board of Trade, 80 Ill. 85; Baxter v. Board of Trade, 83 Ill. 146.

The board of directors had power to expel appellant: People v. Board of Trade, 45 Ill. 112; People v. Board of Trade, 80 Ill. 134; People v. N. Y. Com. Asso. 18 Abbott Pr. Rep. 271; Black & White Smith So. v. Vandyke, 2 Wharton Rep. 309–11; State v. Managers of Cartenet Club, 40 N. J. Law, 295; High on Extraordinary Remedies, § 292; State v. Chamber of Com., 47 Wis. 670.

The decision of the board of directors is conclusive and will not be reviewed either by a court of law or equity: Angell & Ames on Corporations, § 418.

McALLISTER, P. J. The first question for consideration arises upon the position taken by counsel for appellant, and seemingly much relied upon, that whatever power to expel or disfranchise a member may have been given by the incorporating act of the Board of Trade, was conferred in terms upon

the members of the corporation at large, that in its nature it was a power in trust, and could not, therefore, be delegated to a board of directors and exercised by a quorum of twelve of that body.

The authorities recognize a distinction, based upon reason, as respects the power of expulsion, between voluntary, unincorporated bodies, and those which are incorporated, or created by statute. The reason is, that the former class come into existence by the mutual agreement of the persons forming them, and are carried on solely under rules and regulations which the respective bodies adopt. It logically follows in such a case, where all the rights and privileges of the individual members are derived from the body itself, and the members are bound by mutual agreement to be governed by such rules and regulations, that the power of expulsion may be provided for by rules and by-laws, and if it be exercised by a fair and honest compliance with such rules or by-laws, an expelled member is without redress from the courts. But in the latter case, where the body is incorporated and the several members are in the enjoyment of a franchise conferred by statute, as in Bagg's Case, 11 Coke, 93, or that of The People v. The Medical Society of the County of Erie, 32 N. Y. 187, it has generally been held that a member can not be expelled and disfranchised by any act of the corporation, because such member derived his franchise, rights and privileges from the statute, and not from the corporation, unless the power to do so is expressly conferred by the statute. This is peculiarly so as to any corporation owning property in which the respective members have a beneficial interest either absolute or contingent. Bagg's Case, *supra;* Evans v. Philadelphia Club, 50 Penn. St. 107 ; White v. Brownell, 2 Daly, 357; Ang. & Ames. on Corp., §410; Hopkins v. Exeter, Law Rep. 5 Eq. 68 ; Wood v. Wood, Law R., 9 Exch. 190 ; Blisset v. Daniel, 10 Hare, 493 ; Hutchins v. Lawrence, 67 How. Pr. R. 38.

It appears from the record that appellee is a body corporate created by special act of the legislature passed Feb. 18, 1859; that it owns a large amount of property; that its general objects are the promotion of trade in the products of the

country and the interests of its members, by providing a commodious exchange hall, telegraphic facilities and other conveniences, for the transaction of their business, and prescribing rules and regulations under which it may be done; that so valuable are these privileges, the fee to be paid upon becoming a member is ten thousand dollars. It appears that at the time of passing said act, there existed a voluntary unincorporated body of the same name; but just how numerously composed, does not appear. Now, by the first section of that act, all the members of said voluntary body were incorporated as a body politic and corporate, under the name of "The Board of Trade of the City of Chicago." As to those persons it is manifest that whatever franchises, rights or privileges were conferred upon them respectively, were derived directly from the statute. But from our study of said act, it seems to us that as to all persons who should subsequently become members, the character of a voluntary association is plainly marked; that is, that the rights and privileges of such persons were to be in reality derived from the body itself rather than from the statute. At the close of § 1 express authority is given, " to make such rules, regulations and by-laws, from time to time, as they may think proper or necessary, for the government of the corporation hereby created, not contrary to the laws of the land."

Then again, § 4 says: "The said corporation is hereby authorized to establish such rules, regulations and by-laws for the management of their business, and the mode in which it shall be transacted, as they may think proper."

But § 6 comes close to the question under consideration. It reads: "Said corporation shall have the right to admit or expel such persons as they may see fit, in manner to be prescribed by the rules, regulations and by-laws thereof." Here the power is expressly conferred by the act creating the corporation, to expel such persons as "they may see fit, *in manner* to be prescribed by the rules, regulations and by-laws thereof."

But counsel for appellant seem to suppose that the words "in manner" have reference to the mere method of doing it, through a majority of all the members of the corporation,

but are not broad enough to authorize a delegation of the power to a board of directors.

Lexicographers give to the word "*manner*" a broader meaning than that of "*method*." The derivation of the word "*manner*" is from the Latin *manus*, the hand. "*Manner* is literally the handling of a thing, and has a wider sense, embracing both *method* and *mode*." Webster's Dict. (new Ed.) "*method*."

It seems to us, from a consideration of all the provisions of the act, that its framers intended to leave the whole subject-matter of the expulsion of members, to be regulated, both as to method and tribunal, by rules and by-laws of the body, not inconsistent with the principles of natural justice or the laws of the land. In pursuance of that power, the by-laws set out in our statement of the case were adopted, by which appellant, on admission, formally agreed to be bound. We are of opinion that such by-laws were authorized by the act, are not inconsistent with any principle of natural justice or the laws of the land, and are valid; that the trial, conviction and expulsion of appellant were by a tribunal, not only authorized by appellee's charter, but by reason of appellant agreeing to be bound by said by-laws.

This conclusion we regard as removing the only basis for a distinction between this case and cases decided by the Supreme Court of a similar character. We felt it incumbent upon us to fully consider the point that the tribunal expelling was without authority, because, in that event, the resolution or order of expulsion would have been illegal and void, and the appellant's rights unaffected by it. Wood v. Wood, L. Rep. 9 Exch. 190. And the appellant having made so strong a showing as to irreparable injury, we were in doubt whether the case would not present such special circumstances as that an injunction would lie.

As to the other grounds, we think the case, as respects the jurisdiction of chancery, is governed by the cases Fisher v. Board of Trade, 80 Ill. 85, Baxter v. Same, 83 Ill. 146. Those cases are directly in point and hold that a court of chancery is not the proper forum. In other States, and in England, the

rule is different; but we are absolutely bound by the decisions referred to in our Supreme Court, because no distinction can be made upon the facts between this and those referred to.

The decree of the chancellor will be affirmed.

Affirmed.